Dena C. Sharp (SBN 245869)
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

Chris A. Seeger (*pro hac vice* forthcoming)
David R. Buchanan (*pro hac vice* forthcoming)
Stephen Weiss (*pro hac vice* forthcoming)
Scott A. George (*pro hac vice* forthcoming)
**SEEGER WEISS LLP**
55 Challenger Rd, Suite 600
Ridgefield Park, NJ 05667
Telephone: 973-639-9100
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
sweiss@seegerweiss.com
sgeorge@seegerweiss.com

*Attorneys for Plaintiff*
*Brevard Marketing LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| BREVARD MARKETING LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PAYPAL, INC and PAYPAL HOLDINGS, INC,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND OF JURY TRIAL** |

Plaintiff, Brevard Marketing LLC, individually and on behalf of all others similarly situated, brings this action against PayPal, Inc. and PayPal Holdings, Inc. (collectively "Defendants" or "PayPal"), based on personal knowledge, information and believe, and the investigation of counsel, alleges:

**INTRODUCTION**

1. E-commerce is built on the disruption of old brick-and-mortar stores where salespersons might have earned commissions by making recommendations, giving reviews of

1 various products, and their general personability.  The new, e-commerce shop floor is staffed by
2 people, like Plaintiff, who are variously known by such terms as "content creators" or "online
3 influencers" (podcasters, YouTube personalities, Instagram or TikTok influencers, etc.) who
4 review products and services and refer their followers to online retailers, with whom they are
5 affiliated, where purchases can be made.  They serve as Marketing Affiliates to such retailers
6 pursuant to legal agreements, and the same rules apply to such e-commerce sales – make a sale,
7 earn a commission.

8     2.     When one of Plaintiff's followers watches one of Plaintiffs' product reviews and
9 clicks through to an online retailer, a "tracking cookie" is placed on the follower's browser.  This
10 cookie alerts the online retailer that Plaintiff has earned a commission, which could be as high as
11 40% but is more typically between 1-20% of the sale, when the purchase finalized.

12     3.     PayPal has been surreptitiously poaching the commissions of e-commerce
13 salespersons, like Plaintiff, for years.  It operates "Honey", a browser extension that purports to
14 scour the internet for coupons and discount codes for consumers, but which purpose is to replace
15 the tracking cookies of Marketing Affiliates, like Plaintiff, with a PayPal cookie.  That is, PayPal
16 takes credit for making the sale and takes the Marketing Affiliate's commission.  Of course,
17 Plaintiff, like all other Marketing Affiliates, had no idea their cookie has been replaced.  Their
18 followers might not even know about the existence of such cookies, and would have no idea any
19 cookies were being replaced when they used Honey.  Similarly, the online retailer merely pays
20 the owner of the cookie that is found on the follower's browser, and has no idea if there were any
21 prior cookies.  Only PayPal knew of the deception and theft which has garnished it hundreds of
22 millions of dollars at the expense of Plaintiffs and other Marketing Affiliates.

23     4.     Based on PayPal's illegal acts and practices, Plaintiff seeks damages and
24 equitable relief, including disgorgement of PayPal's ill-gotten gains, and asserts claims for
25 conversion, tortious interference with contractual relations, unjust enrichment, and violations of
26 statutory prohibitions on unfair and deceptive business practices on behalf of herself and all
27 others similarly situated.
28

**PARTIES**

5. Plaintiff Brevard Marketing LLC is based in Melbourne, Florida. Plaintiff is a business operation for content creators who work primarily on Amazon alongside YouTube, Instagram, and Facebook with such names as @freshandfelicia, @craftwithfelicia, and @admtim. Through the work on these platforms, Plaintiff earns commission payments under affiliate marketing agreements, and regularly partners with businesses, including PayPal's merchant partners, such as Amazon. Although the content creators working as Plaintiff have continued to gather more followers and views of their videos, Plaintiff has faced continually diminishing commissions over the past few years due to PayPal's Honey browser extension, including a loss of over 300% in Amazon commissions alone.

6. Defendant PayPal Holdings, Inc. is a Delaware corporation and holds all assets and liabilities of PayPal, Inc., a subsidiary Delaware corporation. PayPal transacts business in this district and is headquartered at 2211 North First Street, San Jose, California.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the class is a citizen of a state different from Defendants.

8. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, have purposefully availed themselves of the benefits and privileges of conducting business in this District, are headquartered in the district, and have caused harm to Plaintiff and class members as a direct result of actions they take in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants are subject to personal jurisdiction in this District.

**FACTUAL ALLEGATIONS**

10. Content creators work as affiliates for online retailers, typically with a contractual agreement that referrals will be rewarded with commissions as part of their Affiliate Marketing.

1  Affiliate Marketing is one of the key drivers of this marketplace, with an estimated $10 billion in
2  commissions paid in 2024 with projections estimating over $15 billion in commissions being
3  paid by 2028.
4      11.    Content creators, who serve as Marketing Affiliates for online retailers, are
5  attributed sales by placing tracking cookies (a small text file identifying the content creator) after
6  one of their followers watch the creator's product review and clicks through a link to a retailer
7  where the product can be purchased.  If the follower of the content creator makes the purchase,
8  the content creator, as a Marketing Affiliate, receives a commission for the sale.  Even if the
9  follower waits a few days or weeks before making the purchase, the Marketing Affiliate's
10 tracking cookie remains active to ensure that their commission is duly paid.
11     12.    PayPal's Honey browser extension is an application that consumers can download
12 and easily add to their browser.  PayPal acquired Honey in 2020 when it purchased the Honey
13 Science Corporation for $4 billion, when Honey already had 17 million monthly active users.
14 PayPal has ensured that the number of active users has continued to grow since its acquisition.  A
15 key part of PayPal's marketing of Honey is that it is free.  The justification of PayPal's purchase
16 price of Honey is the basis for this litigation.
17     13.    PayPal markets Honey to consumers as a browser extension that automatically
18 scours the internet for the best available discounts and coupons to ensure that they pay the lowest
19 price.  Once installed, Honey can gain permission from the consumer to add and change user
20 information, including installing and replacing cookies.
21     14.    Once a Marketing Affiliate's follower goes to complete the purchase of a
22 recommended product, Honey gains permission to alter the follower's tracking cookies in four
23 ways, each involving a pop-up screen, and any one of which is sufficient for PayPal's purposes
24 to poach the Affiliate Marketer's commission.
25     15.    First, at check out, Honey creates a pop-up message that it has found coupons or
26 rebates which can be redeemed by clicking an "Apply Coupons" button.  With a click of that
27 button, the Marketing Affiliate's cookie is replaced with a PayPal cookie, and PayPal has
28 poached the commission.

16. Second, even if Honey finds no coupons or rebates, Honey still creates a pop-up message stating that Honey has found no coupons, but that the Marketing Affiliate's follower can "check out with confidence knowing we looked." To get rid of the pop-up message and complete the purchase, the follower clicks on a "Got it" button, acknowledging Honey's message. With the click of that button the Marketing Affiliate's cookie is replaced with a PayPal cookie, and PayPal has poached the commission.

17. Third, Honey also includes a rewards program, PayPal Rewards (formerly Honey Gold), which allows users to accumulate points for future redemption or earn cash back on some sites even when no coupons are found. When a Marketing Affiliate's follower clicks the 'Activate Reward" button the Marketing Affiliate's cookie is replaced with a PayPal cookie, and PayPal has poached the commission.

18. Finally, just before the Affiliate Marketer's follower goes to complete the purchase on the retailer's website. Honey pushes one last pop-up message on top of the webpage. This pop-up includes a button to "Checkout" using PayPal to pay, overriding the payment button on the retailer's website and replacing the Marketing Affiliate's cookie with a PayPal cookie so that PayPal can take the commission.

19. Putting a fine touch on PayPal's deception, but to ensure that consumers continue to install Honey and use it, Honey's claims to find the best coupons and rebates available are false. Manual searches for available coupons and rebates often find more discounts than Honey does. Indeed, PayPal has agreements with several online retailers to limit the amount of discounts that it will offer Honey users. Moreover, whereas PayPal takes the commission, that may be a substantial sum in any given purchase, Honey users earned only pennies as part of the Honey Gold rewards program.

20. As a result of Honey, not only does PayPal take commissions that were earned by Marketing Affiliates, such as Plaintiff, but PayPal causes wider harm to Marketing Affiliates and the e-commerce marketplace on the whole. The lost attributions of sales actually made by Marketing Affiliates compromises existing contracts Marketing Affiliates have with online retailers, weakens their perceived value as Marketing Affiliates, and otherwise denies Marketing

Affiliates use and exploitation of the value they bring to the online marketplace in general and to online retailers in particular.

**TOLLING OF STATUTES OF LIMITATIONS**

21. All applicable statute(s) of limitations have been tolled by Defendants' active and knowing concealment and denial of the facts alleged herein. Plaintiff and Class Members had no reasonable means of discovering that Defendants were surreptitiously poaching commissions through the scheme alleged herein.

22. Defendants had an ongoing obligation to disclose to Plaintiff and Class Members of its practice of replacing cookies that identified the entity which earned a commission by substituting a PayPal cookie for the proper Marketing Affiliate.

23. Due to Defendants' active concealment of this practice, any statutes of limitations that would typically apply to these allegations have been tolled and suspended, and/or the enforcement of such limitations would be inequitable.

**CLASS ACTION ALLEGATIONS**

24. Plaintiff brings this action as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following proposed Class and Subclass:

> **Nationwide Class**: All Marketing Affiliates in the United States who lost affiliate commissions from a United States online merchant to PayPal as a result of the Honey browser extension.
>
> **Florida Subclass**: All Florida-based Marketing Affiliates who lost affiliate commissions from a United States online merchant to PayPal as a result of the Honey browser extension.

25. Excluded from the Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

26. Plaintiffs reserve their right to amend the Class and Subclass definitions if discovery and further investigation reveal that the Class or Subclass should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way

27. **Numerosity.** The members of the Class and Subclass are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of members, the precise number is unknown to Plaintiffs but may be ascertained from Defendants records. Members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

28. **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. Whether Defendants received commissions that belonged to Class members;

   b. Whether Defendants' Honey browser extension was designed to operate as alleged herein, including by replacing attribution for commissions;

   c. Whether Class members are entitled to damages, restitution, equitable relief, statutory damages, punitive damages, exemplary damages, and/or other relief; and

   d. Whether Defendants were unjustly enriched to the detriment of Class members when it was attributed commissions.

29. **Typicality.** Plaintiff's claims are typical of the other Class members' claims because they lost commissions through Defendants' Honey browser extension. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

30. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiffs' interests do not conflict with the interests of the other Class members whom they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will vigorously prosecute her claims in this action. The interests of

the Class will be fairly and adequately protected by Plaintiff and their counsel.

31. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, such that it would be impracticable for the Class members to individually seek redress for Defendants' wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

32. **Declaratory and Injunctive Relief.** Defendants acted or refused to act uniformly with regard to Plaintiff and other Class members, and are continuing to do so, thereby making declaratory relief appropriate with respect to all Class members.

33. As an alternative, Plaintiff seeks issue certification under Rule 23(c)(4) of issues common to all Class members.

## CAUSES OF ACTION
### Count One
### Tortious Interference with Contractual Relations

34. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

35. Plaintiff and Class members had existing contractual and on-going business relationships with one or more online retailers.

36. Defendants knew those contractual and business relationships existed and the manner in which Plaintiff and Class members earned commissions.

37. Defendant's conduct disrupted these pre-existing contractual and business

relationships by replacing the cookies of Plaintiff and Class members with their own, and otherwise preventing Plaintiff and Class members from realizing their entitlements under these contacts and through these business relationships.

38. Defendants acted intentionally or knew that their actions would disrupt these pre-exiting contractual and business relationships.

39. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members suffered economic harm and are entitled to an award of damages in an amount to be determined at trial and such other relief as they may be entitled.

**Count Two**
**Conversion**

40. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

41. Plaintiff and Class members held a right to the commissions and other benefits they earned from their service as Marketing Affiliates.

42. Defendants, through the Honey browser extension, wrongfully took possession of these commissions and other benefits without authorization, depriving Plaintiff and Class members of their rightful property.

43. This unauthorized control over Plaintiff's and Class members' earned commissions and other benefits constitutes conversion.

44. Plaintiff and Class members suffered financial losses as a direct result of Defendant's conversion.

45. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members suffered economic harm and are entitled to an award of damages in an amount to be determined at trial and such other relief as they may be entitled.

**Count Three**
**Unjust Enrichment**

46. Plaintiff hereby incorporates by reference and re-alleges each and every allegation

set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

47. Plaintiff asserts this claim of unjust enrichment in the alternative to the legal causes of action, and/or in the event that Plaintiff and Class members lack an adequate remedy at law.

48. Plaintiff and Class members had earned commissions and other benefits through their own efforts and labors.

49. Defendants unjustly obtained and retained these commissions and benefits through their use of the Honey browser extension.

50. Defendants knowingly deployed the Honey browser extension to obtain these commissions and benefits to which they had no legitimate claims, and retained these commissions and benefits with no right thereto.

51. Defendants' retention of these commissions and benefits is inequitable and unjust, and they continue the inequitable and unjust practices alleged herein.

52. Plaintiff and Class members have not, and due to Defendants' concealment, could not consent to Defendants' enrichment of themselves at the expense of Plaintiffs and Class members.

53. Plaintiff and Class members are entitled to restitution of all commissions and other benefits Defendants took as a result of their improper acts.

## Count Four
### Violation of California Unfair Competition Law

54. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

55. The California Unfair Competition Law "UCL" forbids an "unfair competition," which is defined to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code §17200.

56. Defendants are each a "person" within the UCL's definition, which includes any

"natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." Cal. Bus. & Prof. Code §17201. Defendants are headquartered in California and the acts which give rise to this litigation emanate from their actions in California.

57. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

58. Defendants' actions, as described herein, violate multiple laws, including at least CA Bus. & Prof. §17045 and the laws prohibiting conversion and interference with prospective economic advantage.

59. In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

60. Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants engaged in the immoral, unethical, oppressive, anticompetitive, and unscrupulous practices whereby they stole Plaintiff and other Class members' affiliate marketing commissions through underhanded tactics described herein.

61. Defendants' actions are continuing, and there is no indication that Defendants will cease their activity any time in the future.

## Count Five
## Violation of the Florida Deceptive and Unfair Trade Practices Act

62. Plaintiff hereby incorporates by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

63. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq., declares illegal all "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

64. Defendants have engaged in unfair, unconscionable, and deceptive acts and practices in trade and commerce in violation of the FDUTPA, by surreptitiously replacing the

cookies and attributions of genuine Marketing Affiliates, such as Plaintiff, with cookies and false claim to attribution for any and all commissions attributed to a sale actually generated by the genuine Marketing Affiliate.

65. Defendants wrongfully deprived, and continue to deprive, Plaintiff and other Subclass members of monies they rightfully earned as the true originators of sales arising from their affiliate marketing links. The gravity of harm resulting from Defendants' practices of unconscionably, falsely, and deceptively appropriating commissions that belong to genuine Marketing Affiliates, like Plaintiff, outweighs any potential utility to general commerce or trade.

66. Defendants actually and proximately caused Plaintiff and other Subclass members economic harm by depriving them of commissions they should have earned from referrals through their affiliate links. The conduct alleged herein is continuing and there is no indication that Defendants will cease such activity in the future, absent an order from this Court.

67. Defendants' conduct in violation of the FDUTPA has caused Plaintiff and the other Subclass members to be deprived of referral fees and commission payments for sales they rightfully originated. Plaintiff and the other Class members of the subclass thus suffered lost money or property as a result of Defendants' conduct.

68. Plaintiff and the members of the Subclass therefore seek damages, restitution, a declaration that Defendants' acts violate the FDUTPA, an injunction, and all other appropriate relief in equity, including reasonable attorneys' fees and costs of suit.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff, individually and on behalf of members of the Class and Subclass, respectfully requests that the Court:

A. Certify this action as a class action, appoint Plaintiff as class representative, and Plaintiff's counsel as Class Counsel;

B. Award damages attributable to Defendants' practices to Plaintiff and the Class members in an amount to be determined by a jury;

C. A declaration that Defendants' practices are illegal;

D. Disgorgement of the monies obtained by Defendants through their illegal

practices;

E. Injunctive and equitable relief to cease Defendants' illegal acts and restore Plaintiff and the Class members to the position they would have been but for these illegal acts;

F. Such other relief to which Plaintiff and the Clas members may be entitled and as the Court may enter.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims so triable.

Dated: January 16, 2025                          Respectfully submitted

By: /s/ *Simon S. Grille*
Dena C. Sharp (SBN 245869)
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

Chris A. Seeger (pro hac vice forthcoming)
David R. Buchanan (pro hac vice forthcoming)
Stephen Weiss (pro hac vice forthcoming)
Scott A. George (pro hac vice forthcoming)
**SEEGER WEISS LLP**
55 Challenger Rd, Suite 600
Ridgefield Park, NJ 05667
Telephone: 973-639-9100
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
sweiss@seegerweiss.com
sgeorge@seegerweiss.com

*Attorneys for Plaintiff*